*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARCELLA MCCAUSLAND,

        Plaintiff-Appellant,

v

J.R. THOMPSON COMPANY, LLC d/b/a THE JRT AGENCY, and MARK W. BELLISSIMO,

        Defendants-Appellees.

UNPUBLISHED
August 03, 2026
2:12 PM

No. 373234
Oakland Circuit Court
LC No. 2024-206999-CK

Before: MARIANI, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

In this employment action, plaintiff alleges that her termination breached her five-year term employment agreement, she was subject to gender discrimination and a hostile work environment in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101, *et seq*., and defendants retaliated against her in violation of the payment of wages and fringe benefits act (PWFBA), MCL 408.471, *et seq*. In lieu of answering the complaint, defendants moved for summary disposition under MCR 2.116(C)(8). The trial court granted summary disposition to defendants, denied plaintiff's motion for reconsideration, and denied plaintiff's motion for leave to file an amended complaint. Plaintiff argues that the trial court erred by dismissing her claims. We agree, in part. Plaintiff has pleaded a valid claim for breach of contract, and her gender-discrimination claim meets the low "notice pleading" threshold under MCR 2.116(C)(8). However, plaintiff has failed to plead valid claims for a hostile work environment or retaliation under the PWFBA as a matter of law. For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

This case arises out of the termination of plaintiff's employment as the chief financial officer at defendant J.R. Thompson Company, LLC d/b/a The JRT Agency. Plaintiff began working for J.R. Thompson as its controller and chief accounting officer in November 2015. In September 2019, J.R. Thompson's chief executive officer, defendant Mark W. Bellissimo, told plaintiff that the company was being sold and she would have significant responsibilities in that

regard. Bellissimo told plaintiff that she would be paid a bonus for this additional work if the sale was finalized.

In December 2021, before the sale was complete, plaintiff rejected an at-will employment offer and negotiated a five-year employment agreement. The employment agreement included an exhibit titled, "Terms and Conditions of Employment." Under those terms and conditions, plaintiff's title was changed to chief financial officer. The terms and conditions further stated that the "term" of plaintiff's employment would end on December 31, 2026, and any employment beyond that would be considered "at-will":

> Your employment will be for a period beginning on the Start Date and ending on December 31, 2026 ("Term"). If you remain employed by the Company after the Term absent an express written agreement providing for such an extension, you will be considered an "at-will".

The terms and conditions also guaranteed an annual 5% increase in plaintiff's base salary "[o]n the 1st day of each calendar year during the Term (for calendar years 2023 through 2026 only)[.]"

Notably, the terms and conditions stated that plaintiff would be entitled to severance equal to six months' base salary upon termination other than for cause or resignation for good reason, conditioned on plaintiff's execution of a general release:

> Upon (i) the termination by the Company of Employee's employment with the Company other than for Cause (as defined in Schedule A), or (ii) upon Employee's resignation for Good Reason (as defined in Schedule A) and not a voluntary resignation, Employee shall be entitled to six (6) months base salary ("Severance"). Such Severance shall be paid in accordance with the Company's normal payroll procedures and shall be net of any required withholdings. As a condition precedent to the payment of any Severance, the Company shall require Employee to execute a receipt and general release in such form as shall be determined by the Company in its sole discretion.

The employment agreement included a detailed description of what constituted "termination for cause" or "resignation for good reason." Plaintiff initialed each page of the employment agreement and signed it on December 9, 2021, acknowledging that she read and understood the document. On the same date, J.R. Thompson was sold.[1]

In August 2022, plaintiff filed suit against Third Century Investment Associates, LP, the former owner of J.R. Thompson, seeking payment for the bonus Bellissimo promised for her work on the sale of the company. Bellissimo was a material witness in that litigation. Plaintiff contends that Bellissimo "became angry, hostile, abusive, demeaning, sexist and distant" toward plaintiff after she filed her complaint. Plaintiff also claims that Bellissimo made derogatory sexist remarks

---

[1] J.R. Thompson was sold to Crown Capital Investments (CCI-JRT, LLC), a Michigan limited liability company and a wholly owned subsidiary of Crown Capital Investments, LLC, a Georgia limited liability company.

to her in front of other executive team members. Plaintiff reported Bellissimo's behavior to the human resources director but no action was taken.

In December 2022, Bellissimo rated plaintiff's performance the lowest that she had received in her seven-year history with the company. Plaintiff contends that the lower rating was unjustified and in retaliation for her lawsuit against Third Century. Despite the lower performance review, plaintiff received a $40,000 year-end bonus and a 5% increase in her base salary in January 2023. Following Bellissimo's November 2023 deposition in plaintiff's lawsuit against Third Century, he refused to talk to plaintiff. In December 2023, plaintiff's performance review once again declined. Plaintiff alleges that decline was unjustified and in retaliation for her lawsuit against Third Century. Plaintiff complained about the performance review to the human resources director but no action was taken. Although plaintiff received another 5% increase in her base salary in January 2024, Bellissimo declined to give her a year-end bonus under the management incentive compensation program (MICP). Because plaintiff was the only top-level executive denied a bonus, she maintains that it was retaliatory. Plaintiff complained to the human resources director about Bellissimo's evaluation but no action was taken.

On January 25, 2024, less than two weeks before the trial was scheduled to begin in plaintiff's suit against Third Century, plaintiff was terminated. Plaintiff was not given a reason for her termination other than it was not for cause. Plaintiff was offered a six-month severance package and presented with a release that purportedly released all liability against Bellissimo personally. Plaintiff refused to sign the release for fear that she would give up the claims in the litigation she had pending against Third Century.

In April 2024, plaintiff commenced this action asserting claims for breach of contract, gender discrimination under the ELCRA, hostile work environment under the ELCRA, and retaliation in violation of the PWFBA. In lieu of answering the complaint, defendants moved for summary disposition under MCR 2.116(C)(8). Defendants argued that plaintiff failed to state a claim for breach of contract because she refused to execute a general release, which was a condition precedent to receiving six months' severance for termination without cause. Defendants further asserted that plaintiff failed to plead facts to support her legal conclusions for her gender discrimination and hostile work environment claims. Finally, defendants maintained that plaintiff could not state a claim for retaliatory discharge in violation of the PWFBA because she did not pursue a claim under the PWFBA through the Department of Labor or in her prior action against J.R. Thompson's former owner.

In response, plaintiff argued that the employment agreement was ambiguous because two provisions irreconcilably conflicted—the five-year term's guarantee of termination only for cause and the severance provision allowing for termination without cause. Plaintiff maintained that it was the trier of fact's role to interpret the conflicting provisions and determine whether she was entitled to payment of her salary and benefits for the term of the agreement. Plaintiff further asserted that she pleaded sufficient facts to support a prima facie case of gender discrimination and a hostile work environment claim on the basis of sexual harassment. Plaintiff also argued that she was not required to exhaust her administrative remedies to pursue an alternative public-policy claim for retaliatory discharge under the PWFBA. Alternatively, plaintiff contended that she should be afforded an opportunity to amend her complaint to add counts for retaliation in violation of public policy and the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*.

The trial court granted summary disposition to defendants. Plaintiff moved for reconsideration and for leave to file an amended complaint. The trial court denied both motions, concluding that it did not palpably err and that amendment would be futile. This appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil*, 504 Mich at 159. "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *Id*. (emphasis in original). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. at 160. "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*.

We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Sanders v Perfecting Church*, 303 Mich App 1, 8; 840 NW2d 401 (2013). We also review a trial court's decision on a motion to amend the pleadings for an abuse of discretion. *Id*. at 8-9. "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Colen v Colen*, 331 Mich App 295, 300; 952 NW2d 558 (2020) (cleaned up).

## III. ANALYSIS

Plaintiff argues that she pleaded viable claims and the trial court erred by dismissing her claims and denying her leave to file an amended complaint. We agree in part and disagree in part.

## A. LEGAL STANDARD

"Michigan is a traditional notice-pleading jurisdiction with a relatively low bar for the sufficiency of initial allegations, particularly because parties generally will not yet have the benefit of discovery." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (cleaned up). A complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]" MCR 2.111(B)(1). "The primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposing party to take a responsive position." *Glasker-Davis*, 333 Mich App at 230 (cleaned up).

"If a court grants summary disposition pursuant to MCR 2.116(C)(8) . . . the court must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile." *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647, 657 (1997), citing MCR 2.116(I)(5). "Leave [to amend] shall be freely given when justice so requires." MCR 2.118(A)(2). See also *Michigan Head & Spine Inst, PC v Michigan Assigned Claims Plan*, 331 Mich App 262, 277; 951 NW2d 731 (2019) (it is an abuse of discretion to deny leave to amend where amendment would not be futile and is in the interest of justice).

## B. BREACH OF CONTRACT

Plaintiff argues that she sufficiently pleaded a breach of contract claim. We agree.

This Court explained various legal principles applicable to breach-of-contract claims in *Total Quality, Inc v Fewless*, 332 Mich App 681, 694; 958 NW2d 294 (2020):

> A party claiming breach of contract must show "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014). The primary goal of contract construction is to give effect to the parties' intent. *Jay Chevrolet, Inc v Dedvukaj*, 310 Mich App 733, 735; 874 NW2d 146 (2015). To achieve this goal, the Court must read the contract language, giving it its plain and ordinary meaning. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016). When the language of the contract is unambiguous, the contract must be interpreted and enforced as written. *Id*. When the contract language is subject to multiple interpretations, it is considered ambiguous. *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 418; 668 NW2d 199 (2003). "Ambiguities in a contract generally raise questions of fact . . . ." *Id*.

"Michigan law generally presumes that employment relationships are terminable at the will of either party." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). To overcome this presumption, a party must present sufficient proof of "an express contract for a definite term," "a provision forbidding discharge in the absence of just cause," or "proofs which permit a promise implied in fact of employment security, i.e., for a particular period of time or to terminate only for just cause." *Rowe v Montgomery Ward & Co*, 437 Mich 627, 636-637; 473 NW2d 268 (1991). Employment contracts for a definite duration, such as the one here, are presumptively terminable only for just cause. *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579, 611; 292 NW2d 880 (1980).

The employment contract in this case clearly states that its term would end on December 31, 2026. Because the contract expressly states that it is for a definite duration, it is presumptively terminable only for just cause. *Id*. Additional language in the term provision supports the presumption that plaintiff's employment was only terminable for just cause: "If you remain employed by the Company after the Term absent an express written agreement providing for such an extension, you will be considered an 'at-will.' " In other words, plaintiff's five-year term of employment was only terminable for just cause but if the term was not expressly extended with another written agreement, any employment beyond December 31, 2026, would be at-will. "[C]ourts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). If the contract is read to allow plaintiff's employment to be terminable in the absence of just cause during the five-year term, the second sentence of the term provision would be rendered meaningless.

The contract also includes a severance provision that states plaintiff would be entitled to six months' severance if she was terminated without just cause during the term or resigned for "good reason" as defined in the employment agreement. As a condition precedent to the payment of any severance, the provision states that plaintiff was required to execute a receipt and general release. Relying on this provision, the trial court concluded that plaintiff failed to state a claim for breach of contract because the employment agreement clearly and unambiguously stated "if plaintiff was fired without cause, she would be entitled to six months' severance pay upon signing a receipt and general release, which she admittedly has not done."

Plaintiff argues that the language in the severance provision irreconcilably conflicts with the contract's term provision and therefore it is a question of fact for the jury to decide.[2] We agree. Under the term provision, plaintiff's five-year term of employment was only terminable for just cause. But the severance provision states that plaintiff could be terminated by the company with or without cause at any time during the five-year term, which purportedly created an at-will employment contract. If the contract is read to allow plaintiff's employment to be terminable in the absence of just cause during the five-year term, the term provision would be rendered meaningless. "If two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." *Id*. at 480.

> Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of the parties in entering the contract. Thus, the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning. [*Id*. at 469 (cleaned up).]

---

[2] Plaintiff attached e-mail communications to her complaint and provided additional e-mail communications in response to defendants' motion for summary disposition to demonstrate the parties' employment-contract negotiations. Plaintiff also included two earlier versions of the employment agreement as exhibits to her response to the summary disposition motion. Because the trial court granted the motion under MCR 2.116(C)(8), our review is limited to the pleadings alone. *El-Khalil*, 504 Mich at 160. The signed employment agreement and the e-mails that were attached to the complaint are considered part of the pleadings. MCR 2.113(C)(2); see also *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007) (holding that when a contract is attached to a complaint in an action based on a contract, "the written contract becomes part of the pleadings themselves, even for purposes of review under MCR 2.116(C)(8)."). Cf. *El-Khalil*, 504 Mich at 163 (recognizing that e-mails attached to a complaint are part of the pleadings and could be considered under MCR 2.116(C)(8) but that "the trial court erred by considering the content of the e-mails as substantive evidence sufficient to dismiss plaintiff's claim under MCR 2.116(C)(8)" because the "plaintiff did not adopt those e-mails and the assertions levied against him in them as true."). Because the unsigned at-will employment agreements and the additional e-mails presented in response to the dispositive motion were not part of the pleadings, those documents are not included in our review. See *id*. at 160.

Because the language of the employment agreement is ambiguous, the trial court erred by granting summary disposition to defendant on plaintiff's breach-of-contract claim and abused its discretion by denying plaintiff's motion for reconsideration.

Plaintiff further argues that the trial court abused its discretion by denying her motion to amend her complaint to include additional allegations regarding mutual mistake or a mistake on her part and fraud by defendants to seek reformation of the employment agreement. "A court of equity has power to reform the contract to make it conform to the agreement actually made." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398, 729 NW2d 277 (2006) (cleaned up). Reformation of a contract is possible if a party can "prove a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence." *Id*. However, reformation is not warranted on the basis of a unilateral mistake or a mistake by one party regarding the legal effect of an agreement. *Id*.

Considering the factual allegations in the proposed amended complaint as true and in the light most favorable to plaintiff, we conclude that plaintiff has sufficiently pleaded a claim for reformation of the employment agreement. While plaintiff will ultimately have the burden to produce clear and convincing evidence to warrant reformation, neither this Court nor the trial court may evaluate the factual sufficiency of the claim at this stage of the litigation—that's a determination to be made under MCR 2.116(C)(10). Accordingly, the trial court abused its discretion by denying plaintiff leave to amend her complaint regarding her breach-of-contract claim.

## C. GENDER DISCRIMINATION

Plaintiff further maintains that she stated a valid claim for gender discrimination in violation of the ELCRA. We agree.

At the time that plaintiff commenced this action, MCL 37.2202(1)(a), as amended by 2009 PA 190, stated in relevant part that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex . . . ." A plaintiff may establish discrimination under the ELCRA by direct or indirect evidence. *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 132; 666 NW2d 186 (2003). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001) (cleaned up). Where a plaintiff shows direct evidence of discrimination, they may prove their discrimination allegation in the same manner as any other case. *Id*.

In the absence of direct evidence of discrimination, such as in this case, a plaintiff must establish a prima facie case through circumstantial evidence using a burden-shifting analysis. *Sniecinski*, 469 Mich at 132-134. To establish a rebuttable prima facie case of discrimination, a plaintiff must show that he or she "was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997). Stated differently, "a plaintiff must establish a

prima facie case by proving that she was a member of a class entitled to protection under the statute and that, for the same or similar conduct, she was treated differently than a man." *Major v Village of Newberry*, 316 Mich App 527, 541; 892 NW2d 402 (2016) (cleaned up). "The crux of a sex discrimination case is that similarly situated persons have been treated differently because of their sex." *Marsh v Dept of Civil Serv (After Remand)*, 173 Mich App 72, 79; 433 NW2d 820 (1988). Materially adverse employment actions might include termination, demotion as evidenced by lowered pay or a less distinguished title, loss of benefits, or "significantly diminished material responsibilities." *Chen v Wayne State Univ*, 284 Mich App 172, 202; 771 NW2d 820 (2009).

There is no dispute that plaintiff was a member of a protected class—women—and that she was qualified for her position. Plaintiff alleged that Bellissimo made demeaning and derogatory comments to her such as directing her to get out her abacus or referring to her as a "bean counter." Plaintiff asserted that these comments were made during weekly leadership meetings and were "designed to undermine her credibility as a female executive . . . ." Plaintiff maintained that similar comments were not made to male executives. Plaintiff further asserted Bellissimo displayed gender bias in various manners, including: undermining plaintiff's authority; using "derogatory, demeaning and sexist comments towards Plaintiff, showing an open hostility for a female executive who was singled out for especially harsh treatment because she was a woman[;]" differential treatment in MICP bonuses; and terminating plaintiff "because she was an assertive female executive[.]" Plaintiff alleged that she reported Bellissimo's behavior but her complaints were ignored.

The trial court acknowledged that plaintiff identified her gender and pleaded that discrimination on the basis of gender was the reason she was terminated. The court, however, found these allegations insufficient, stating, "[W]hile the complaint details a change in the way she was treated after she filed her lawsuit against Third Century for failure to pay a bonus, it does not establish that she was singled out due to her sex, or that a hostile work environment was created where she was subject to sexual advances, harassment, or other actions because she was a woman. Bean counter just can't get you there . . . ."

While not artfully pleaded, plaintiff sufficiently pleaded a claim for gender discrimination under the notice-pleading standard.[3] Defendants know the nature of the claim that they need to

---

[3] Plaintiff's proposed amended complaint included examples of discriminatory conduct toward plaintiff and other female employees and alleged that plaintiff "was subject to terms and conditions of employment that adversely affected her and other women because of their gender . . . ." However, on appeal, plaintiff has not raised any arguments challenging the trial court's denial of her motion to amend her complaint regarding her gender-discrimination claim. While plaintiff's statement of questions presented asserts that the trial court abused its discretion by denying her motion to amend her complaint, plaintiff has failed to provide any argument regarding amendment of her gender-discrimination claim in her brief and thus it is abandoned. See *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (cleaned up) ("An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims."). However, our failure to consider this issue does not preclude plaintiff from moving to amend her complaint on remand.

defend against: plaintiff was a member of a protected class and was denied her MICP bonus and terminated as a result of discrimination on the basis of her gender. Defendants' arguments and the trial court's conclusion relate to the claim's factual sufficiency, not its legal sufficiency. See *El-Khalil*, 504 Mich at 160. As our Supreme Court stated in *El-Khalil*:

> While the lack of an allegation can be fatal under MCR 2.116(C)(8), the lack of evidence in support of the allegation cannot. Plaintiff alleged that the adverse employment action resulted from his protected activity. That is enough to withstand challenge under MCR 2.116(C)(8). The relative strength of the evidence offered by plaintiff and defendants will matter if the court is asked to decide whether the record contains a genuine issue of material fact. But that is only a question under MCR 2.116(C)(10). [*Id*. at 162.]

### D. HOSTILE WORK ENVIRONMENT

Plaintiff also asserts that she stated a valid claim for hostile work environment under the ELCRA. We disagree.

"Discrimination because of sex includes sexual harassment." MCL 37.2103. The ELCRA defines "sexual harassment" as:

> [U]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> * * *
>
> (*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment . . . .
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . .environment. [MCL 37.2103(k).]

This is commonly referred to as a "hostile work environment action." See *Radtke v Everett*, 442 Mich 368, 380-382; 501 NW2d 155 (1993). To establish a hostile work environment claim based on sexual harassment, a plaintiff must establish:

> (1) plaintiff belonged to a protected group; (2) plaintiff was subjected to communication or conduct on the basis of sex; (3) plaintiff was subjected to unwelcome sexual conduct or communication; (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with plaintiff's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. [*Hamood v Trinity Health Corp*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 364627), slip op at 8, citing *Radtke*, 442 Mich at 382-383.]

"[W]hether a hostile work environment exists should be determined by an objective reasonableness standard, not by the subjective perceptions of a plaintiff." *Radtke*, 442 Mich at 388. In *Radtke*, our Supreme Court held:

a hostile work environment claim is actionable when the work environment is so tainted that, in the totality of the circumstances, a reasonable person in the plaintiff's position would have perceived the conduct at issue as substantially interfering with employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment. [*Radtke*, 442 Mich at 372.]

As discussed above, the parties do not dispute that plaintiff is a member of a protected group. Plaintiff broadly claimed that Bellissimo "maintained a hostile work environment based on plaintiff's gender." She alleged that Bellissimo's conduct was "bully[ing], controlling and dominant." As for specific examples, plaintiff pleaded that Bellissimo "use[d] body language to display dominance" toward female employees by leaning back in his chair "with his hands behind his head projecting his genital region forward in a sign of intimidation and dominance of the conversation." Plaintiff also alleged that Bellissimo barked at plaintiff during leadership meetings to "get your abacus out" and referred to plaintiff as a "bean counter." Plaintiff claimed that these remarks were demeaning, derogatory, and sexist. Plaintiff maintained that similar comments were not made to the male executives. Plaintiff asserted that Bellissimo's behavior interfered with her position as a female executive. Plaintiff alleged that she reported Bellissimo's behavior but her complaints were ignored. Finally, plaintiff asserted that Bellissimo's actions caused her emotional distress.

The trial court summarily dismissed plaintiff's hostile work environment claim, stating that her complaint did not establish that "a hostile work environment was created where she was subject to sexual advances, harassment, or other actions because she was a woman." The trial concluded that referring to plaintiff as a "bean counter" or Bellissimo's intentional forward projection of his genital region while seated in front of women was insufficient. We agree. Plaintiff did not allege that Bellissimo made either unwelcome sexual advances or requests for sexual favors. Thus, we must determine whether she sufficiently pleaded that she was subjected to "conduct or communication of a sexual nature." "[A]ctionable sexual harassment requires conduct or communication that *inherently* pertains to sex." *Corley v Detroit Bd of Ed*, 470 Mich 274, 279; 681 NW2d 342 (2004). "Verbal or physical conduct or communication that is not sexual in nature is not sexual harassment." *Id*. at 280. "[C]onduct or communication that is gender-based, but is not sexual in nature, does not constitute sexual harassment as that term is clearly defined in the CRA." *Haynie v State*, 468 Mich 302, 304; 664 NW2d 129 (2003). Referring to a female employee as a "bean counter" is not conduct or communication of a sexual nature as required to support a claim of sexual harassment under the ELCRA. Similarly, a male employee allegedly "projecting his genital region forward in a sign of intimidation and dominance of the conversation" does not inherently pertain to sex. Plaintiff concedes on appeal that Bellissimo's comments were not inherently sexual in nature but contends that she set forth sufficient facts to establish "she *believed* she was being subjected to a hostile work environment because of her gender." (Emphasis added). Plaintiff's subjective perceptions do not establish a hostile work environment claim, which

-10-

is determined by an objective reasonableness standard. See *Radtke*, 442 Mich at 388. The trial court did not err by dismissing plaintiff's hostile work environment claim.[4]

## E. RETALIATION UNDER THE PWFBA

Plaintiff argues that she stated a prima facie claim for retaliation in violation of the PWFBA. We disagree.

The PWFBA "provides a means to enforce rights with respect to wages and fringe benefits and prescribes remedies for violations of these rights." *Buckley v Professional Plaza Clinic Corp,* 281 Mich App 224, 235; 761 NW2d 284 (2008). The PWFBA includes an antiretaliatory provision:

> An employer shall not discharge an employee or discriminate against an employee because the employee filed a complaint, instituted or caused to be instituted a proceeding under or regulated by this act, testified or is about to testify in a proceeding, or *because of the exercise by the employee on behalf of an employee or others of a right afforded by this act*. [MCL 408.483(1) (emphasis added).]

This Court has concluded that the last clause of this antiretaliatory provision[5] applies only if an employee is "exercising a right afforded by the act on behalf of *another* employee or other person. Simply exercising a right on one's own behalf would not bring an employee within the purview of [MCL 408.483]." *Reo v Lane Bryant, Inc*, 211 Mich App 364, 367; 536 NW2d 556 (1995) (emphasis in original). We do not agree with this interpretation, but we are bound by it.[6] MCR 7.215(C)(2), (J)(1). Plaintiff pleaded in her complaint that *she* was denied a bonus and terminated in retaliation for pursuing litigation against Third Century for the bonus she was promised upon the sale of J.R. Thompson. Plaintiff did not pursue a claim on behalf of other

---

[4] Plaintiff's proposed amended complaint included additional allegations in support of her hostile work environment claim. However, on appeal, plaintiff has not raised any arguments challenging the trial court's denial of her motion to amend her complaint regarding this claim. While plaintiff's statement of questions presented asserts that the trial court abused its discretion by denying her motion to amend her complaint, plaintiff has failed to provide any argument regarding amendment of her hostile work environment claim in her brief and thus it is abandoned. See *Bill & Dena Brown Trust*, 312 Mich App at 695.

[5] Plaintiff's allegations do not implicate the other clauses of this provision, particularly given that, as discussed *infra*, plaintiff's litigation against Third Century was not brought under the PWFBA.

[6] A panel of this Court previously concluded "that *Reo* was wrongly decided and that a conflict panel should evaluate its reasoning and conclusions." *Ramos v Intercare Community Health Network*, 323 Mich App 136, 142; 916 NW2d 287 (2018). This Court declined to convene a special panel to resolve the conflict. *Ramos v Intercare Community Health Network*, unpublished order of the Court of Appeals, issued February 21, 2018 (Docket No. 335061). And the application for leave to appeal to the Supreme Court was denied. *Ramos v Intercare Community Health Network*, 503 Mich 917; 920 NW2d 141 (2018).

employees. Accordingly, the PWFBA's antiretaliatory provision is not applicable and the trial court did not err by dismissing plaintiff's claim for retaliation under the PWFBA.

Plaintiff argues that, at the very least, she has a public-policy claim for exercising her rights under the PWFBA and the trial court abused its discretion by denying her an opportunity to amend her complaint accordingly. We disagree. Michigan law recognizes an exception to at-will employment terminations that "are so contrary to public policy as to be actionable." *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695; 316 NW2d 710 (1982). Public policy is ordinarily manifested in legislative enactments. *Id*. There are three recognized public-policy exceptions to the at-will doctrine:

> (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment." [*McNeil v Charlevoix Co*, 484 Mich 69, 79; 772 NW2d 18 (2009) (citations omitted).]

Plaintiff's proposed amended complaint alleged a third-prong public-policy claim asserting that she was discharged in retaliation for exercising her rights under the PWFBA in her prior action against Third Century. But plaintiff did not allege a claim under the PWFBA in her prior action against Third Century.[7] As she concedes on appeal, she asserted claims for breach of contract, unjust enrichment, and equitable estoppel for her unpaid bonus. Moreover, plaintiff acknowledged to the trial court that she did not have a viable claim under the PWFBA against Third Century because the promise of a bonus was not in writing.[8] The trial court did not abuse its discretion by denying plaintiff leave to amend her complaint to add a claim for retaliation in violation of public policy because such an amendment would be futile. *Weymers*, 454 Mich at 658.

Finally, plaintiff argues that the trial court abused its discretion by denying her leave to amend her complaint to add a claim for retaliation in violation of the WPA. Because plaintiff's proposed amended complaint did not include a WPA claim and plaintiff did not seek to add a WPA claim in her motion to amend her complaint, we cannot conclude that the trial court's decision fell outside the range of reasonable and principled outcomes.

---

[7] Defendants' motion for summary disposition included a copy of plaintiff's complaint from the prior action, and plaintiff did not dispute that she did not assert a claim under the PWFBA in her action against Third Century. The trial court was permitted to take judicial notice of the claims asserted in plaintiff's prior action. See MRE 201(b) and (e). See also *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 649; 873 NW2d 842 (2015) (taking judicial notice of a public record under MRE 201).

[8] MCL 408.471 defines "fringe benefits" as "compensation due an employee pursuant to a *written contract or written policy* for holiday, time off for sickness or injury, time off for personal reasons or vacation, bonuses, authorized expenses incurred during the course of employment, and contributions made on behalf of an employee."

-12-

## IV. CONCLUSION

We affirm the trial court's dismissal of plaintiff's claim for hostile work environment, retaliation under the PWFBA, and its denial of her request to amend her complaint to add counts for retaliation in violation of public policy. But we reverse the trial court's dismissal of her claims for breach of contract and gender discrimination. and its denial of plaintiff's request for leave to amend her complaint to include additional allegations for reformation of the employment agreement. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Philip P. Mariani
/s/ Sima G. Patel